Your Honors, and may it please the Court, Gary Simms on behalf of Appellant B-Side Inc. I respectfully reserve two minutes of my time for rebuttal, please. The sole question, according to the union in this case, is whether B-Side was what is commonly called a statutory employer under California Labor Code Section 2750.5, which I'll refer shorthand to the statute in oral argument this morning, because it's the only statute in question. Under that statute, if a person, for example, a general contractor, hires a subcontractor who is required to be licensed, and that subcontractor, in fact, does not have a license, then the subcontractor is deemed to be the employee of the general contractor rather than as an independent contractor, and in turn, case law has said that subcontractors' employees are the employees of the general contractor. That's the context we have here. What happened was that B-Side got pulled into hiring an unlicensed contractor. It didn't know it was hiring. It thought it was hiring a licensed contractor. So I just want to make clear this. It wasn't somebody trying to circumvent the law. Even the district court suggested they may have been pulled into this innocently. But nonetheless, the statute applies. Kennedy, in a way, I can understand because of the name and the individual and the principal having a license, but the company not, and so forth, and yet the party that's in the best position to confirm that the subcontractor actually was licensed would appear to be B-Side. Yes, Your Honor. We're not disputing that it is essentially a strict liability statute that applies. The points I'd like to make this morning are, first of all, there is one important fact that is not in the briefing because it just arose recently before a little argument, and we submitted a letter to the Court. The Joint Administrative Committee award had two components. One was a roughly $42,000 award for contributions that Zoom, the subcontractor, should have made to Zoom's own employees. And because of the application of the statute, the committee said B-Side is responsible for that, and that was affirmed by the district court judgment. But that amount has been paid in full. So the benefits are out of the case. Yes. The benefits to Zoom's employees are out of the case. So what we are left with, and that affects not only the dollar amount, but I think the legal analysis, because the remaining award for approximately $116,000 was not for any employees of Zoom. It was for workers that Zoom might have hired. Under this union hiring procedure, you have to do this one for one. You call the union and say, send over a worker, and then you use one of your own. These are not actual workers who ever had anything to do with the project. We don't even know who they might have been, who they were identified. And I think that's relevant for two reasons. I think the kind of the colloquial term in the trade is ghost workers. In other words, they're not real workers. They never had any relationship to the project. They were merely on the union rolls. There's no case that has ever applied 2750.5 to a so-called ghost worker, because it just doesn't exist. And that's also consistent with the terms of the statute, because it refers to a worker who is, quote, performing services or who is performing such services. Well, by definition, if you've never even been hired and never even been to the project, you couldn't have performed any services. So in none of the cases cited either by the union in its trial court or this court's briefing or in the district court decision has the statute ever been applied to employees that might have been hired. That would be not only beyond the language of the statute, but the intent. Think about a practical example. As you hire an unlicensed subcontractor, and completely unknown to you, maybe six months later, they refuse to hire a worker because of his age or race or ethnicity. Suddenly, you're on the hook for employment discrimination. There's no such case, anything coming close to that. So the underlying claim here was for breach of contract, right? I'm sorry, Your Honor? The underlying claim here was for breach of contract. It is in two ways. That's sort of the essence, right? I think so. But it's a little confusing, Your Honor, I think, because there's you could first say the sub, Zoom Electric, was the breached its contract with its own employees. In other words, it didn't pay them what it was supposed to pay. Well, that's been resolved by the settlement that's paid that's out of the case. The next question would be then did B-side breach its contract with the other employees. But as I say, there were no employees. These were just names, not even names, just potential names. I thought the contractual relationship went with the union, not with the employees. Well, that's true, Your Honor. And I think there's a problem with that as well, because B-side contends essentially that the statute is like a light switch. It's either on or it's off. If you're the employer, you're liable for everything that your employees did. In that framework, the employee would be Zoom because it was unlicensed. So the question would be not just you don't just say whether B-side was the employer or not, the question is if they were, are they then responsible for something that Zoom did, vicarious liability, agency, whatever. And as you point out, Your Honor, it would be a breach of contract. Their Zoom's contract with the union can B-side be held responsible for that. And once again, in none of the briefs ---- Kennedy, why not? Well, for two reasons. In none of the cases cited once again by Zoom ---- Do any cases say to the contrary? It's never come up. Well, so the fact that it hasn't come up isn't persuasive reason to why not. It just hasn't come up. You can tell me none of the cases say they're liable, but if none of the cases say they're not liable, we've got kind of a vacuum. So what's the other reason? The ---- I think the other reason is that, once again, you'd have to go beyond where we are, for example, in this case procedurally. If vicarious liability, if you think about it, Your Honor, leaving aside this statute, you will virtually never, and I don't think I've ever seen it applied in the context of a breach of contract. If you're a homeowner or a business anything and your, quote, employee goes out and somehow breaches a contract, first the question is could they? Could somebody working in a coffee shop go breach a lease? Well, one would think not. If somebody working in a coffee shop was told to go to the warehouse and buy a bunch of napkins and they went to the warehouse and took the napkins and didn't pay for it, I wouldn't be surprised if the employer, that person, would be liable for paying for the napkins. No, that would be a tort. But in a ---- Well, I don't think so. You buy the napkins but don't pay for it. That's not like a breach of contract, sales contract. Why wouldn't the employer logically be responsible for whatever somebody does within the scope of employment? Because there's nothing to suggest that that was in the contemplation of the statute. Once again, for example ---- Well, I read the statute, and what in the statute should I look at to find the limitation you're arguing for? Well, let me explain it this way, Your Honor. Let's say that you're ---- May I try my question first? What in the statute provides the limitation you're arguing for? Because it talks about performing services. And it seems to me the common-sense interpretation of that is an employee is doing something for you in the course and scope of employment. ZoomElectric was doing something for you. It was performing its obligations as a subcontractor. But course and scope is different from agency. Once again, if I hire somebody, and if they go out and try to breach a lease, for example, I have, once again, used the coffee shop worker, and they try to cancel my lease, if I've never authorized them to do that, if they have no actual or apparent authority to do that ---- Your client authorized ZoomElectric to hire people to accomplish what the subcontract was supposed to accomplish. Actually, we hired Zoom, not ZoomElectric. We hired Zoom, not ZoomElectric. Shell game of the names is part of the problem here. I understand. Right. And that wasn't our fault. And the district court didn't impute any fault. We were sucked into this thing because of some underhanded doings. And I think that's a policy reason to be careful about how this thing gets applied. Because, once again, if the court wants to say that anything an employee does is attributable to the employee, that will completely rewrite the law by curious liability and agency. For example, let's say this court employs a clerk, which we know it does, and the clerk defaults on his home mortgage. Is anybody going to say because you employed the clerk, you're responsible for that? No, because it's not within the scope of his employment. Exactly. And the point is, would ---- But Zoom's hiring of people to accomplish the subcontract is exactly within the scope of what Zoom's supposed to be doing for B-side. Not in breach of a contract. There's nothing to suggest that B-side ever authorized, suggested, or ratified any breach of contract by Zoom. Now, maybe that can be developed. I think that you're touching on an important point. If this goes back to the district court and the district court finds, for example, that B-side somehow was involved in this, knew about it, ratified it, then, yes, they could possibly have agency liability. I don't think by curious liability fits, but agency principle liability for having authorized this breach. But they didn't authorize any breach. They didn't even know it was happening. So I think ---- And that's what you have to deal with. Right. Which you described as strict liability, the fact they don't know it happens. If there's a basis, it's strict liability if there's a basis for liability. In other words, the statute imposes no liability on anybody. It's just a definitional statute. It says if you get caught up in this trap, like our client did, you're an employer. But there's no ---- there has to be an independent basis for liability, a tort, and if you're going to suggest breach of contract, but the statute imposes no liability on anyone for anything. That's what the claim was all about, was breach of contract. It has to be. Well, but it's ---- You're saying you just said we're suggesting breach of contract. That's what the case was all about. But what was the ---- okay. To use Judge Clifton's point, if you look at what was the breach, presumably it was this, because we're only left with part of the case now, remember. We're only left with the payments that should have been made to these ghost workers. So the question is, did Zoom breach an obligation to people that fit within the statute of workers performing services? Ghost workers never performed any services. So there was no ---- even if you accept the premise that a breach of contract would be sufficient, how can B-side be held liable for a breach of not paying contributions on behalf of somebody that didn't exist? And remember, it makes those, quote, second-tier  It makes the unlicensed contractor your own ---- But what was the basis of the award for these un ---- for these, quote, unquote, ghost workers? That the B-side failed to hire the union workers. And they had ---- But they had an obligation under the ---- To have a ratio of union workers. To hire union workers, correct? B-side. I mean, I'm sorry. Zoom did, yes. The other point, I think you mentioned something important about the award that is not as clear as it should be in the briefs, and I would apologize for this. I apologize for that, except I was brought in after the briefing. This ---- the procedural context matters here, too, I think. What happened was the joint administrative committee brought this grievance against Zoom. B-side was not named as a party to that proceeding, and the award specifically did not name B-side as a party to that proceeding. And then Zoom came into the district court and filed a petition to vacate that award. B-side did not and could not join in that because they weren't a party to the award. There was nothing to vacate. And then somehow it gets metamorphosized into the union comes in and files a cross-complaint seeking to confirm the award against B-side. But I'm aware of no authority in which a court has confirmed an arbitration award against a party who was never in the award. It would be like this Court ---- Was that objection stated to the district court? I'm sorry? Was that objection presented to the district court? Yes, it was. It was not to be in all candor. I don't think it's adequately briefed in this Court. I will concede that. I'm not familiar with it, so. All right. And can I ---- Do you want to save some time for rebuttal? Yes, I see. I have about two minutes left. I would. Thank you, Your Honor. You've got two minutes and 47 seconds. Thank you. May it please the Court. My name is Sarah Tosla. I represent the counter plaintiffs and appellees in this action. This case, as with the earlier argument, presents a very simple question, and that is, can a California employer be held accountable for the injuries caused by its employee? And Your Honors are exactly correct that employers are liable for the actions of their employees done in the course and scope of their employment. And Section 2750.5, I agree, is for all intents and purposes, for ---- with respect to contracting and contractor's licenses, an operation of strict liability, in that if a contractor does not have a license, they are conclusively deemed the employee of the hiring entity. This Court should uphold the decision below for three reasons, and first is that the plain text of Section 2750.5 operates to conclusively establish this employment relationship. Maybe you could take us through the text. It's not ---- I understand how the statute has been interpreted, but when I first picked up the statute and started reading it, I was lost. What is it in there that you point to? The second to last paragraph says, and I quote, any person performing any function or activity for which a license is required pursuant to Chapter 9 of the California Business and Professions Code, which governs contractor's licensing laws, shall hold a valid contractor's license as a condition of having independent contractor status. And if you're not an independent contractor, the statute is a rebuttable, is a presumption of employment status. If you're not an independent contractor, you are an employee. So how does that work here? Zoom is a, quote, employee? Yes. B-side. Yes, Your Honor. Zoom Electric Inc. is the contracting entity. The parties agree that ZEI was unlicensed at the time and that B-side contracted with them. And they, the corporate entity, is the employee and did do the construction work on the Oakland School, it's a middle school, in furtherance of its relationship with B-side. So being an employee doesn't mean that your employer is liable for everything that you're liable for. I'm an employee of the Court of Appeals. The Court of Appeals doesn't become liable for everything I do thereafter. If I don't pay for something, the court's not responsible. Where do you draw the line? Well, the line is drawn with whether the employee's actions are done in furtherance of the employment relationship in the course and scope of their employee status. So here, Zoom was retained to do this fire alarm, the electrical work on a fire alarm replacement project. And they did so. And they paid people, and B-side paid Zoom and was directly responsible. If Zoom hadn't paid those people, this logically would have said those people have a direct claim as employees of B-side. The claim here is that Zoom didn't pay people that it didn't actually hire. That is, it had an obligation to hire people that it didn't. So it has this contractual obligation which is undisputed in front of us with regard to how Zoom is obligated to pay, I hate to use the term ghost worker, but I'll use it because you know what it means. How does that translate into an obligation to be imposed on B-side? B-side didn't get anything from that. These are people that Zoom should have been responsible for, and Zoom dropped the ball. But why is that within the employment? But B-side did benefit by Zoom Electric's actions. Zoom, as B-side's employee, broke its legal obligations to hire union labor and used that non-union labor to replace the fire alarms at the school. B-side benefited from that, and that was done in furtherance of the- How did B-side benefit? Because B-side had a contractual obligation with the Oakland Unified School District to get construction work at this work site done. And they got it done, but they didn't get it done by not hiring these people. They got it done by hiring these people. Well, they got it done, respectfully, they got it done because their contractor didn't follow the law. Not holding B-side responsible here would frustrate both the purposes of Section 2750.5 and the state's licensing laws, which are both designed to protect the public as well as workers from unscrupulous or dishonest or fighters. You said, and I want to see if there's something to it, that B-side benefited. I see no benefit to B-side from what happened here. That doesn't mean that B-side's not liable, but I still don't see any benefit to B-side from what happened. You concede that B-side did not benefit from what happened. I don't see how they, other than being in this lawsuit, I don't see how they didn't benefit. The construction work got done. So your point is that they got paid? Yeah, they got paid. By the school district. And they, yes, and they paid. But they didn't get paid for not hiring the other people, they got paid for hiring the people that did. I mean, Zoom paid the people that did the work. It's not a case of somebody who came in, did the work, and didn't get paid. People that did the work got paid. Liability comes from not hiring people that they had contractual obligations to hire. So Zoom's supposed to pay twice. And properly so, because Zoom had an obligation to hire these other people and didn't. But B-side wasn't directly involved in that. B-side didn't get any benefit from not hiring the people that were supposed to be hired. So how did B-side benefit? Again, the construction work was done and they paid Zoom for that. But they assume as the employer they are liable for the employee's misconduct. I guess your response should be that B-side, as the prime contractor, had an obligation to monitor Zoom. Yes. The onus is on the general contractor. Zoom didn't have, whatever the situation was, didn't have the required license. Yes. And so, because you can invoke, then you can invoke the benefit of the statute. Yes. The statute is a strict liability statute.  It's pretty much... Was B-side a party to the project labor agreement? Yes. In order to, both B-side and Zoom are parties to the project labor agreement. And in fact, in order to get the work at this project, you have to be signatory to the project labor agreement. Could they have been named in the initial, was it grievance proceeding, or I've forgotten what it was called? Yes. Grievance proceeding. As it happens, they weren't named. That's correct. They weren't named. At the time of the grievance proceeding, the union didn't know that Zoom electric was... Everybody thought Zoom was on the up and up. Yes. Exactly. And we pursued our claims against B-side as soon as we could confirm them. I wanted to clarify one point that B-side raised in its argument, and there's actually, there's an ERISA claim at issue here, in addition to the benefits under the JAC award, and that ERISA claim was not part of the settlement of the state case, so I just wanted to clarify that. Is that ERISA, is there, in the judgment that's before us, there's an amount of money for some sort of ERISA benefits? Yes. There's, we brought actions to enforce the, or confirm and enforce the arbitration award, and for a later accruing ERISA delinquent benefit contributions against Zoom, and then, because B-side is Zoom's employer, B-side is also responsible, or is responsible for Zoom's liabilities under those claims. I don't know about this ERISA thing, I'm kind of lost on that one. I recall there was an ERISA claim in the case. It somehow seemed to me that it hasn't been raised as an issue on appeal, I'm not sure what we're supposed to be thinking about with regard to that claim. It's, well, it's relevant insofar as it's part of the judgment against Zoom and B-side, and B-side has, under 2750.5, is also responsible for that claim. Has B-side raised an objection to that? I don't believe so, but I wanted to clarify for the court that that was not part of the Let me ask about the point that Mr. Sims raised toward the end, although acknowledging that it may not have been raised in the opening brief. How is it that B-side pops into the case after the grievance proceeding, and after the case is started in district court? Do you know procedurally how B-side does it? Procedurally, yes, so we undertook discovery against Zoom Electric, including taking the owner, and that's how we discovered that Zoom Electric was unlicensed, and that B-side could therefore be found liable under 2750.5, and at that point, we moved to file an amended counter-complaint to bring in B-side. So that's when B-side came into the case? Mm-hmm. Okay. Yes. Anything else? I don't think so, unless the court has further questions. Thank you. Thank you. Just to make some very quick bullet points, Your Honors, to clarify a couple of things. First, at the beginning of Union's argument, they talked about this conclusive presumption. That's clearly not the case. Just for clarification on language and whatever form the Court writes its opinion, 2750.5 specifically says there is a rebuttable presumption. There is no conclusive presumption. There's also been the language about strict liability, and I may have partially used that myself. Let's call it a statute of strict application. Once again, it imposes no liability of any kind on any basis against anyone. It just defines who is an employer if there is then some basis of liability, but it imposes no liability on its own. On the question, Your Honor, that Judge Clifton, that you followed up on about how the award confirmed against it to which it was never a party, as I acknowledge, I don't think that was made clear in the briefing in this case. In the trial court it was, but not here, and if the Court believes that's worthy of consideration, we would welcome the opportunity to submit a short supplemental brief if the Court so desires and, of course, let the Union file a response brief. The other way to look at what happened to these ghost workers, we've been talking about a breach of contract, the whole, if you want to call it hierarchy of the statute once again, is that the unlicensed person is the employee, and then its workers aren't deemed to be the employees of the general contractor. So if you step back and think about it, we're being told, as Beaside, you should have paid these union obligations for these ghost workers who are your employees, but they never existed. They never performed any services. So under the statute, how could they be Beaside? If Beaside itself, a party to the project labor agreement, Beaside understood the obligation, Beaside could have either monitored the licensing status of its contractor or monitored the employment hiring practices of its contractor to protect itself. It chose to do neither. So why is it anybody else's responsibility to look after what Beaside could have looked after itself? I can only say that it's a matter of course, yes. Why they behaved the way they did. But I look at it and say, well, who's in a best position to protect? Yes, Your Honor, that is the policy of the statute. I need to make two dollar points real quickly here. The settlement, there was this notion of ERISA. It seems to me the record is clear that those ERISA payments were part of what was due under this approximately $42,000 award, which has been paid. And the other point is, as you know, there's been briefed the award of attorneys fees that was awarded under California law to a prevailing party. It should be obvious, but if the Court either reverses or remands the judgment, that award will have to be vacated. Verrilli, I mean, there's been a settlement outside the context we've been advised of it. But from my perspective, it doesn't change what we do in reviewing the district court's decision. We review it to the extent that there's been a satisfaction of judgment or a settlement or something. That may extinguish the claim, but so far I don't see anything in front of us that permits us to do anything other than review what the district court has given us. That's right. I just wanted to be clear, the Court couldn't direct payment of money that's already paid. We wouldn't do that anyway. We're just reviewing what the district court did. Yes. And, of course, an affirmance of the judgment would be an affirmance to pay the whole amount, because there's some of them. Well, they can file a partial satisfaction of judgment of $45,000, whatever it is. That's correct, Your Honor. When you get back down to the district court, you can clear up whatever needs to be done. Yes, that's correct, Your Honor. Thank you. Thank you. The matter is submitted.
judges: Paez, Clifton, Duffy